**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

GENE C. LUKEN,

        Plaintiff,

vs.

TINA MARIE EDWARDS, formerly
TINA MARIE LUKEN,

        Defendant.

No. C10-4097-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANT'S MOTION TO
DISMISS**

------------------------

## TABLE OF CONTENTS

**I.  INTRODUCTION AND BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   **A.  Procedural Background** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   **B.  Factual Background** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**II.  LEGAL ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
   **A.  Standards For A Motion To Dismiss** . . . . . . . . . . . . . . . . . . . . . . . 4
   **B.  Analysis of Luken's Claims** . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
      **1.  Title III claim** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
      **2.  Invasion of privacy claim** . . . . . . . . . . . . . . . . . . . . . . . 10
         **a.  Invasion of privacy under Iowa law** . . . . . . . . . . . . 11
         **b.  Intrusion upon seclusion theory** . . . . . . . . . . . . . . 12
      **3.  Iowa 808B claim** . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
      **4.  Invasion of attorney-client privilege claim** . . . . . . . . . . . . . 18

**III.  CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

This case represents the federal fallout from the marital dissolution proceeding between plaintiff Gene C. Luken ("Luken") and his former wife, defendant Tina Marie Edwards, f.k.a. Tina Marie Luken ("Edwards"). Edwards seeks the dismissal of all claims against her, pursuant to Federal Rule of Civil Procedure 12(b), for failure to state a claim.

## I. INTRODUCTION AND BACKGROUND

### A. Procedural Background

On October 22, 2010, plaintiff Gene C. Luken filed his Complaint against defendant Tina Marie Edwards alleging four causes of action. In Count I, Luken contends Edwards violated Title III of the Omnibus Crime and Control and Safe Streets Act of 1968, as amended by the Electronic Communications Privacy Act of 1986, 18 U.S.C. §§ 2510-2520 ("Title III" or "the Act") by intercepting telephone calls between him and other individuals, including his attorney. In Count II, Luken asserts an Iowa common law claim for invasion of attorney-client privilege based on Edwards's interception his telephone calls. Count III contains an Iowa common law claim for invasion of privacy and Count IV alleges a claim under Iowa's wiretapping act, Iowa Code § 808B.8.

On December 1, 2010, Edwards moved to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). Specifically, Edwards contends the Complaint contains legal conclusions and the elements of the causes of action in conclusory terms, and fails to provide the factual basis which would support such claims. Edwards also argues Luken's invasion of attorney-client privilege claim should be dismissed because Iowa courts have never recognized such a claim. On December 3, 2010, Luken filed an Amended Complaint in which he again alleges the same four causes of action against Edwards. On December 7, 2010, Luken filed his resistance to Edwards's motion. Luken

argues the Amended Complaint clearly states factual allegations supporting each of his claims. He also argues that Iowa courts have recognized the attorney-client privilege as a common law right and its breach by Edwards constitutes a viable cause of action. On December 13, 2010, Edwards filed a reply brief in which she argues that the Amended Complaint contains the same defects as the original Complaint and Luken's claims against her should be dismissed for failure to state a claim.

## B. Factual Background

On a motion to dismiss, I assume all facts alleged in Luken's Amended Complaint are true, and liberally construe those allegations. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("When ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.") (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555–56 (2007)). I draw the following factual background in such a manner.

Plaintiff Gene C. Luken is a resident of Spirit Lake, Iowa. Defendant Tina Marie Edwards is a resident of Dickinson County, Iowa. Luken and Edwards were married. On July 24, 2008, a petition to dissolve their marriage was filed. A divorce decree in their case was filed on June 1, 2010. Luken and Edwards lived in the same residence while their divorce was pending. After their divorce, they continued to live in the same residence for sixty days.

Luken "had an expectation of privacy both while conversing with his counsel and conversing with others." Amended Compl. at ¶ 18. Edwards intercepted telephone calls between Luken and other individuals, including his attorney, while Luken and Edwards's divorce was pending. Edwards listened to Luken and his attorney discussing pretrial, trial, and post-trial strategy, and took notes of these conversations. Edwards used and disclosed

these conversations. Luken was disadvantaged throughout the divorce because Edwards knew what Luken and his counsel were planning, frustrating his attempts to settle before and after trial.

## II. LEGAL ANALYSIS

Edwards seeks dismissal of all claims for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). After reviewing the standards for a motion to dismiss, I will address the specific issues raised by Edwards's motion *seriatim.*[1]

### A. Standards For A Motion To Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for a motion to dismiss on the basis of "failure to state a claim upon which relief can be granted."[2] In its decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court revisited the standards for determining whether factual allegations are sufficient to survive a Rule 12(b)(6) motion to dismiss:

---

[1] The parties do not argue that anything other than Iowa law applies to the pendent common law claims, and both Luken and Edwards utilize Iowa authorities in their briefs. In the absence of a dispute between the parties, I assume Iowa law applies, and will consider each of the pendent common law claims under Iowa law.

[2] Effective December 1, 2007, Federal Rule of Civil Procedure 12 was "amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules." FED. R. CIV. P. 12, advisory committee's note. The advisory committee notes make it clear that the "changes are to be stylistic only." *Id.* The stylistic changes to Rule 12(b)(6) are in fact minimal, as Rule 12(b)(6) continues to authorize a motion to dismiss "for failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). Thus, the amendment did not change the standards for a Rule 12(b)(6) motion.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, *ibid.; Sanjuan v. American Bd. of Psychiatry and Neurology, Inc.,* 40 F.3d 247, 251 (C.A.7 1994), a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see *Papasan v. Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed.2004) (hereinafter Wright & Miller) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"), on the ASSUMPTION THAT ALL THE allegations in the complaint are true (even if doubtful in fact), see, *e.g.*, *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 508, n. 1, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002); *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely").

*Bell Atlantic*, 550 U.S. at 555-56 (footnote omitted); *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (instructing that "short and plain statement" requirement "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation."). Thus, the

Eighth Circuit Court of Appeals has recognized that, under *Bell Atlantic*, "To survive a motion to dismiss, a complaint must contain factual allegations sufficient 'to raise a right to relief above the speculative level. . . .'" *Parkhurst v. Tabor*, 569 F.3d 861, 865 (8th Cir. 2009) (quoting *Bell Atlantic*, 550 U.S. at 555). To put it another way, "the complaint must allege 'only enough facts to state a claim to relief that is plausible on its face.'" *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 387 (8th Cir. 2009) (quoting *Bell Atlantic*, 550 U.S. at 570); *accord Iqbal*, 129 S. Ct. at 1949 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'") (quoting *Bell Atlantic*, 550 U.S. at 557).

Nevertheless, the court must still "accept as true the plaintiff's well pleaded allegations." *Parkhurst*, 569 F.3d at 865 (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)); *B&B Hardware, Inc.*, 569 F.3d at 387 ("[W]e 'assume[ ] as true all factual allegations of the complaint'" (quoting *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007)). The court must also still "construe the complaint liberally in the light most favorable to the plaintiff." *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) (post-*Bell Atlantic* decision). On the other hand, "[w]here the allegations show on the face of the complaint that there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is [still] appropriate." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008) (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997), for this standard in a discussion of Rule 12(b)(6) standards in light of *Bell Atlantic*).

### B. Analysis of Luken's Claims

#### 1. Title III claim

Edwards seeks dismissal of Luken's Title III claim. She argues Luken has failed to allege sufficient facts to obtain relief under Title III because his allegations are almost entirely legal conclusions which must be disregarded under *Iqbal*. Luken counters, arguing his factual allegations in the Amended Complaint plausibly states a claim under the Act. Luken specifically asserts Edwards violated 18 U.S.C. § 2511(1)(a) when she intentionally intercepted telephone calls Luken was having with his attorney and others about their pending divorce, and took notes of those conversations.

The United States Supreme Court has observed that "Title III has as its dual purpose (1) protecting the privacy of wire and oral communications, and (2) delineating on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized." *Gelbard v. United States*, 408 U.S. 41, 48 (1972) (citing S. Rep. No. 1097, 90th Cong., 2d Sess., 66 (1968), reprinted in 1968 U.S.C.C.A.N. 2112, 2153). The Court also noted that: "[a]lthough Title III authorizes invasions of individual privacy under certain circumstances, the protection of privacy was an overriding congressional concern". *Id*. In 1986, Congress amended Title III to include electronic communications, updating the wiretap laws to account for new telecommunication technologies.[3] *See United States v. Herring*, 933 F.2d 932, 935 (11th

---

[3]Under Title III, "electronic communications" is defined as:

> any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce, but does not include--

(continued...)

Cir. 1991).  The Act's civil damages provision affords a private right of action to "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter[.]" 18 U.S.C. § 2520(a); *see Deal v.  Spears*, 980 F.2d 1153, 1156 (8th Cir. 1992); *see also  DIRECTV, INC. v. Rawlins*, 523 F.3d 318,

---

[3](...continued)

> (A) any wire or oral communication;
> (B) any communication made through a tone-only paging device;
> (C) any communication from a tracking device (as defined in section 3117 of this title); or
> (D) electronic funds transfer information stored by a financial institution in a communications system used for the electronic storage and transfer of funds;

18 U.S.C. § 2510(12).  "Wire communications," which are excluded from the definition of electronic communications, is defined as:

> any aural transfer made in whole or *in part* through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception (including the use of such connection in a switching station) furnished or operated by any person engaged in providing or operating such facilities for the transmission of interstate or foreign communications or communications affecting interstate or foreign commerce and such term includes any electronic storage of such communication;

18 U.S.C. § 2510(1).  "Oral communication" is defined as:

> any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation, but such term does not include any electronic communication;

18 U.S.C. § 2510(2).

326 (4th Cir. 2008); *DIRECTV, Inc. v. Bennett*, 470 F.3d 565, 567 (5th Cir. 2006); *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 167 (3d Cir. 2005). The Act provides that any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, oral, or electronic communication," 18 U.S.C. § 2511(1)(a), can be found civilly liable under § 2520(a). *See Spears*, 980 F.2d at 1156; *see also Rawlins*, 523 F.3d at 326; *Bennett*, 470 F.3d at 567; *Pepe*, 431 F.3d at 167. To state a claim for civil damages under § 2520(a) and § 2511(1)(a), Luken must allege Edwards intentionally intercepted or endeavored to intercept a wire, oral or electronic communication of Luken's.[4] Section 2511(1) pertains solely to intentional interceptions.[5] *See Thomas v. Seth*, 317 Fed. App'x 279, 281 (3d Cir. 2009); *Abraham v. County of Greenville, S.C.*, 237 F.3d 386, 391 (4th Cir. 2001); *Forsyth v. Barr*, 19 F.3d 1527, 1538 n.21 (5th Cir. 1994); *Tapley v. Collins*, 41 F. Supp. 2d 1366, 1372 (S.D. Ga. 1999); *Peavy v. Harman*, 37 F. Supp. 2d 495, 510 (N.D. Tex. 1999).

As discussed above, Rule 8 requires that a plaintiff provide a "short and plain statement" of his claim. Luken has done this with respect to his Title III claim, alleging specific facts that , if proven true, will sustain this claim. Namely, Luken alleges Edwards intentionally intercepted telephone calls Luken was having with his attorney or others about Luken and Edwards's pending divorce. Although Luken does not identify the

---

[4]The term "intercept" is defined broadly as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." *Id.* § 2510(4).

[5]"[T]he Electronic Communications Privacy Act of 1986 changed the mens rea required for violations from 'willful' to 'intentional.'" *Bess v. Bess*, 929 F.2d 1332, 1334 (8th Cir. 1991).

manner or means Edwards used to intercept these telephone calls, the Eighth Circuit Court

of Appeals has instructed:

> Rule 8 does not, however, require a plaintiff to plead "specific facts" explaining precisely how the defendant's conduct was unlawful. *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam). Rather, it is sufficient for a plaintiff to plead facts indirectly showing unlawful behavior, so long as the facts pled "'give the defendant fair notice of what the claim is and the grounds upon which it rests,'" *id.* ( *quoting Twombly,* 550 U.S. at 555, 127 S. Ct. 1955) (alteration omitted), and "allow [ ] the court to draw the reasonable inference" that the plaintiff is entitled to relief. *Iqbal,* 129 S. Ct. at 1949.

*Braden v. Wal-Mart Stores, Inc.*, 598 F.3d 585, 595 (8th Cir. 2009). Luken satisfies these

requirements by alleging Edwards's interception "involved listening" to and taking notes

about multiple telephone calls between Luken and his attorney.[6] Amended Compl. at

¶¶ 9-10. It is reasonable to infer from these allegations that Edwards' intentionally

intercepted Luken's telephone calls. The Eighth Circuit Court of Appeals has explicitly

recognized a Title III cause of action by one spouse against the other for intercepting

telephone conversations in the marital home. *See Bess v. Bess*, 929 F.2d 1332, 1334 (8th

Cir. 1991); *Kempf v. Kempf,* 868 F.2d 970, 973 (8th Cir. 1989). I find Luken has

presented factual allegations that plausibly state a Title III claim and this portion of

Edwards's Motion to Dismiss is denied.

### 2. *Invasion of privacy claim*

Edwards also seeks dismissal of Luken's Iowa common law claim for invasion of

privacy. She argues the Amended Complaint contains nothing but legal conclusions and

---

[6]Edwards's notes of some of these conversations are attached to the Amended Complaint.

the elements of this cause of action in conclusory terms, and fails to provide the factual basis which would support this claim. Luken contends that the Amended Complaint clearly states factual allegations supporting his claim of invasion of privacy.

### a.    *Invasion of privacy under Iowa law*

The Iowa Supreme Court first recognized the tort of invasion of privacy in *Bremmer v. Journal-Tribune Publishing Co., 76 N.W.2d 762, 764-65 (1956). See *In re Marriage of Tigges*, 758 N.W.2d 824, 828 (Iowa 2008); *Stessman v. Am. Black Hawk Broadcasting Co.,* 416 N.W.2d 685, 686 (Iowa 1987); *Howard v. Des Moines Register & Tribune Co.,* 283 N.W.2d 289, 291 (Iowa 1979); *Winegard v. Larsen,* 260 N.W.2d 816, 818 (Iowa 1977). In *Bremmer,* the tort was defined as invasion of "the right of an individual to be let alone, to live a life of seclusion, to be free from unwarranted publicity." *Bremmer,* 76 N.W.2d at 764. Since the recognition of the tort in *Bremmer,* the Iowa Supreme Court has adopted and applied the principles of invasion of privacy articulated in the Restatement (Second) of Torts (1977). *See In re Marriage of Tigges*, 758 N.W.2d at 829; *Stessman,* 416 N.W.2d at 686; *Lamberto v. Bown,* 326 N.W.2d 305, 309 (Iowa 1982); *Anderson v. Low Rent Housing Comm'n of Muscatine,* 304 N.W.2d 239, 248 (Iowa 1981); *Howard,* 283 N.W.2d at 291; *Winegard,* 260 N.W.2d at 822 (first applying those principles).

The Restatement principles the Iowa Supreme Court has adopted are found in § 652A and subsequent sections defining each form of the tort. Section 652A states as follows:

> (1) One who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other.
>
> (2) The right of privacy is invaded by

(a) unreasonable intrusion upon the seclusion of another, as stated in § 652B; or

(b) appropriation of the other's name, or likeness, as stated in § 652C; or

(c) unreasonable publicity given to the other's private life, as stated in § 652D; or

(d) publicity that unreasonably places the other in a false light before the public, as stated in § 652E.

RESTATEMENT (SECOND) OF TORTS § 652A; *see In re Marriage of Tigges*, 758 N.W.2d at 829; *Stessman,* 416 N.W.2d at 686; *Winegard,* 260 N.W.2d at 822. In *Winegard*, the Iowa Supreme Court clarified the requirements of each of these forms of the tort. *Id.* Here, Luken relies exclusively on the first form of the tort, the "intrusion upon seclusion" theory.

**b.** *Intrusion upon seclusion theory*

Under the intrusion upon seclusion theory,

One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

RESTATEMENT (SECOND) OF TORTS § 652B. In *Winegard*, the Iowa Supreme Court defined intrusion upon seclusion as requiring "an intentional intrusion upon the solitude or seclusion of another which would be highly offensive to a reasonable person." *Winegard,* 260 N.W.2d at 822.[7] Unlike other forms of invasion of privacy, intrusion

---

[7]Comments to the Restatement (Second) of Torts § 652B further clarify this
(continued...)

[7](…continued)
formulation of the tort:

> *a.* The form of invasion of publicity covered by this Section does not depend upon any publicity given to the person whose interest is invaded or to his affairs. It consists solely of an intentional interference with his interest in solitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable [person].

> *b.* The invasion may be by physical intrusion into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiff's room in a hotel or insists over the plaintiff's objections in entering his home. It may also be by use of the defendant's senses, with or without mechanical aids, to oversee or overhear the plaintiff's private affairs, as by looking into his upstairs windows with binoculars *or tapping telephone wires.* It may be by some other form of investigation or examination into his private concerns, as by opening his private mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents. The intrusion itself makes the defendant subject to liability, even though there is no publication or other use of any kind of photograph or information outlined. . . .

> *c.* The defendant is subject to liability under the rule stated in this Section only when he has intruded into a private place, or has otherwise invaded a private seclusion that plaintiff has thrown about his person or affairs. Thus there is no liability for the examination of a public record concerning the plaintiff, or of documents that the plaintiff is required to keep and make available for public inspection. Nor is there liability for

(continued…)

upon seclusion does not require publication. *See Lamberto,* 326 N.W.2d at 309; *Winegard,* 260 N.W.2d at 822; RESTATEMENT (SECOND) OF TORTS § 652B, cmt. a.

To recover under the intrusion upon seclusion theory,

> a plaintiff must show, first, that the defendant intentionally intruded upon the seclusion that the plaintiff "has thrown about [his or her] person or affairs." Restatement § 652B comment c; *accord Winegard,* 260 N.W.2d at 822. Second, the intrusion must be one that would be "highly offensive to a reasonable person." *Winegard,* 260 N.W.2d at 822; *accord* Restatement § 652B. The defendant is not liable, however, if the plaintiff is already in public view. Restatement § 652B comment c.

---

[7](...continued)

> observing him or even taking his photograph while he is walking on the public highway, since he is not then in seclusion, and his appearance is public and open to the public eye. Even in a public place, however, there may be some matters about the plaintiff, such as his underwear or lack of it, that are not exhibited to the public gaze; and there may still be invasion of privacy when there is intrusion upon these matters. . . .

> *d.* There is likewise no liability unless the interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object. Thus there is no liability for knocking at the plaintiff's door, or calling him to the telephone on one occasion or even two or three, to demand payment of a debt. It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded. . . .

RESTATEMENT (SECOND) OF TORTS § 652A cmts. a-d (emphasis added).

*Stessman,* 416 N.W.2d at 687; *see In re Marriage of Tigges*, 758 N.W.2d at 829 (quoting *Stessman,* 416 N.W.2d at 687); *see also Hill v. McKinley*, 311 F.3d 899, 906 (8th Cir. 2002) (noting non-Iowa "courts that have confronted 'intrusion upon seclusion' cases have emphasized that the conduct must be highly offensive to a reasonable person.").

Turning to the first element of the tort, the defendant intentionally intruded upon the seclusion plaintiff "'ha[d] thrown about [his or her] person or affairs,'" *In re Marriage of Tigges*, 758 N.W.2d at 829 (quoting *Stessman,* 416 N.W.2d at 687); *see Winegard,* 260 N.W.2d at 822; RESTATEMENT (SECOND) OF TORTS § 652B, cmt. c., the Amended Complaint factually alleges Edwards repeatedly listened to private, confidential telephone calls between Luken and his attorney about Luken's divorce. A reasonable inference to be drawn from these factual allegations is that Edwards's actions were intentional. These allegations, which I must assume to be true, establish the intrusion element. *See Peavy v. Harman*, 37 F. Supp.2d 495, 521 (N.D. Tex. 1999) (noting where defendants' eavesdropped on plaintiff's telephone conversations with a police scanner that "[e]avesdropping is the quintessential example of a highly offensive intrusion upon seclusion."), *aff'd on other grounds and rev'd on other grounds*, 221 F.3d 158 (5th Cir. 2000); *Cozzolino v. Maricopa County*, No. CV-04-2229-PHX-FJM, 2006 WL 1794761, at *2 (D. Ariz. June 27, 2006) (holding plaintiffs stated a viable intrusion upon seclusion claim where they alleged defendants wiretapped plaintiff's home); *Amati v. City of Woodstock, Ill.,* 829 F. Supp. 998, 1010-11 (N.D. Ill. 1993) (holding plaintiffs pled a viable intrusion upon seclusion claim under Illinois law where defendants were alleged to have tapped telephone calls made on line maintained by police department for private, personal calls); *see also Fowler v. Southern Bell Tel. & Tel. Co.,* 343 F.2d 150, 156 (5th Cir. 1965) (finding under Georgia law "that tapping a telephone amounts to an intrusion

upon plaintiff's solitude. . ."); *Binkley v. Loughran*, 714 F. Supp. 776, 780 (M.D.N.C. 1989) (noting "[w]iretapping is generally sufficient to state a claim of intrusion into seclusion."); *Cavallaro v. Rosado,* No. CV054009939, 2006 WL 2949143, at *4 (Conn. Super. Ct. Oct. 5, 2006) (noting allegations of wiretapping and eavesdropping have been held sufficient to state a claim for intrusion upon seclusion); W. PAGE KEETON ET AL., PROSSER & KEETON ON THE LAW OF TORTS § 117, at 884-85 (5th ed. 1984) (citing eavesdropping on telephone calls by wiretapping as an example for the tort of intrusion into the seclusion of another).

The second element requires the intrusion be "highly offensive to a reasonable person." *In re Marriage of Tigges*, 758 N.W.2d at 829; *Stessman,* 416 N.W.2d at 687; *Winegard,* 260 N.W.2d at 822. The Amended Complaint's factual allegations about Edwards's intrusion upon Luken's solitude are, from the perspective of a reasonable person, "highly offensive" both because of Edwards's repeated interceptions of Luken's telephone calls, but also because some of the calls involved attorney-client discussions. An individual discussing his or her divorce case with counsel could reasonably expect that their conversation would be private, and the intrusion on such calls would be "highly offensive to a reasonable person." Thus, I find Luken has pleaded sufficient facts to establish the second element of the tort and this portion of Edwards's Motion to Dismiss is denied.

### 3.  *Iowa 808B claim*

Edwards also seeks dismissal of Luken's claim under Iowa Code Chapter 808B. Title III and Chapter 808B are nearly identical. *See Iowa Beta Chapter of Phi Delta Theta Fraternity v. State,* 763 N.W.2d 250, 260 (Iowa 2009); *State v. Fox*, 493 N.W.2d 829, 831 (Iowa 1992). Both statutes provide a civil remedy for those whose communications

16

are intercepted. *Compare* 18 U.S.C. § 2520 and Iowa Code § 808B.8.[8] To prevail on his Chapter 808B claim, Luken must show that Edwards willfully intercepted, used, or disclosed his telephone conversations. *See* IOWA CODE § 802B.2. Although Chapter 808B uses the term "willfully" rather than Title III's term "intentional" to describe a defendant's required state of mind, there is no meaningful difference between the statutes because "'willfully' as used in section 808B.2 means purposefully." *Iowa Beta Chapter of Phi Delta Theta Fraternity,* 763 N.W.2d at 262. Edwards's arguments for dismissing Luken's Chapter 808B claim are identical to her Title III arguments, arguments I have previously rejected. Luken has presented specific factual allegations that plausibly state a Chapter 808B claim. Specifically, he alleges Edwards intentionally intercepted Luken's telephone calls with his attorney and others about Luken and Edwards's pending divorce. Such

---

[8]Iowa Code § 808B.8 provides in relevant part:

> 1. A person whose wire, oral, or electronic communication is intercepted, disclosed, or used in violation of this chapter shall:
> *a.* Have a civil cause of action against any person who intercepts, discloses, or uses or procures any other person to intercept, disclose, or use such communications.
> *b.* Be entitled to recover from any such person all of the following:
> (1) Actual damages, but not less than liquidated damages computed at the rate of one hundred dollars a day for each day of violation, or one thousand dollars, whichever is higher.
> (2) Punitive damages upon a finding of a willful, malicious, or reckless violation of this chapter.
> (3) A reasonable attorney's fee and other litigation costs reasonably incurred.

IOWA CODE § 808B.8(1).

allegations that plausibly state a Chapter 808B claim and this portion of Edwards's Motion to Dismiss is also denied.

### 4.    Invasion of attorney-client privilege claim

Edwards argues Luken's invasion of attorney-client privilege claim should be dismissed because it has never been recognized by an Iowa court. Alternatively, she contends, even if Iowa courts were to recognize such a claim, the Amended Complaint fails to provide the factual basis which would support any such a claim. Luken argues Iowa courts have recognized the attorney-client privilege and Edwards's alleged actions should give rise to an intentional tort under Iowa law.

Under Iowa common law, "'[a]ny confidential communication between an attorney and the attorney's client is absolutely privileged from disclosure against the will of the client.'" *Keefe v. Bernard*, 774 N.W.2d 663, 669 (Iowa 2009) (quoting *Shook v. City of Davenport,* 497 N.W.2d 883, 886 (Iowa 1993)). The privilege is "'of ancient origin. It is premised on a recognition of the inherent right of every person to consult with legal counsel and secure the benefit of his advice free from any fear of disclosure.'" *Keefe*, 774 N.W.2d at 669 (quoting *Bailey v. Chicago, Burlington & Quincy R.R.,* 179 N.W.2d 560, 563 (Iowa 1970)). Iowa Code § 622.10 bars disclosure of such confidential communications "in giving testimony." *McMaster v. Board of Psychology Examiners,* 509 N.W.2d 754, 757 (Iowa 1993).

Luken has cited no Iowa authority recognizing, or even discussing, an independent tort claim against a third-party for invasion of attorney-client privilege and my own research has disclosed none.[9] A federal court is bound to apply the applicable state law

_____

[9]The only legal authorities to address whether a client can recover damages based on a third-party's intrusion on the attorney-client privilege have squarely rejected the

(continued...)

in conformity with the decisions of the highest state court. "It has limited discretion to adopt untested legal theories brought under the rubric of state law." *Affiliated FM Ins. Co. v. Trane Co.*, 831 F.2d 153, 155 (7th Cir. 1987); *see A. W. Huss Co. v. Continental Casualty Co.*, 735 F.2d 246, 253 (7th Cir. 1984). This is the concern presented by Luken's invasion of attorney-client privilege claim. He is attempting to introduce an entirely new and novel theory of liability. Such a claim has never been presented to either the Iowa Supreme Court or the Iowa Court of Appeals for decision. Thus, I am left completely without guidance as to the direction the Iowa courts would likely take on the issue.[10]

Federal courts of appeals have indicated that parties wishing to press innovative interpretations of state law should litigate those claims in state court rather than federal court. *See Afram Export Corp. v. Metallurgiki Halyps, S.A.*, 772 F.2d 1358, 1371 (7th Cir. 1985); *Shaw v. Republic Drill Corp.*, 810 F.2d 149, 150 (7th Cir. 1987); *see also Haynes v. Alfred A. Knopf, Inc.,* 8 F.3d 1222, 1234 (7th Cir. 1993) ("The plaintiffs are asking us to innovate boldly in the name of the Illinois courts, and such a request is better addressed to those courts than to a federal court."); *Chang v. Michiana Telecasting Corp.*, 900 F.2d 1085, 1087-88 (7th Cir. 1991) ("a litigant whose case depends on a change in

---

[9](...continued)
existence of such a cause of action. *See Madden v. Creative Servs., Inc.,* 51 F.3d 11 (2d Cir. 1995) (relying on answer to certified question in *Madden v. Creative Servs., Inc.,* 84 N.Y.2d 738, 622 N.Y.S.2d 478, 646 N.E.2d 780 (1995), which held that New York does not recognize a tort action by a client for an intruder's violation of the attorney-client privilege).

[10]My preference here would be to certify this question to the Iowa Supreme Court. *See* N.D. IA. L.R. 83; Iowa Code § 684A.1. However, because neither party has requested that the court certify this question, I decline to certify the question *sua sponte.*

state law had best start in state court"). In *Afram Export Corp.*, the plaintiff had sought damages in a breach of contract action for opportunity costs incurred because of defendant's breach of contract. *Afram Export Corp.*, 772 F.2d at 1370. In declining to sustain this expansive claim, the court observed that:

> A party who wants a court to adopt an innovative rule of state
> law should litigate in state rather than federal court (if it can;
> it cannot if the defendant removes the case to federal court).
> Federal judges are disinclined to make bold departures in areas
> of law that we have no responsibility for developing.

*Id.* at 1371; *see In re C-T of Virginia*, 958 F.2d 606, 612 (4th Cir. 1992) (quoting *Afram*); *Hinojosa v. City of Terrell*, 834 F.2d 1223, 1231 n.12 (5th Cir. 1988) (same).

Similarly, in *Shaw*, 810 F.2d at 150, the plaintiff asked the federal court to recognize a new exception to the general rule that a corporation which purchases the assets of another corporation does not also assume its liabilities. In declining to create such an exception, the Court of Appeals reiterated its "unwillingness to speculate on any trends in state law." Id. The court went on to point out that:

> We write only to emphasize that our policy will continue to be
> one that requires plaintiffs desirous of succeeding on novel
> state law claims to present those claims initially in state court.

*Id.*

In the absence of any authority that Luken's invasion of attorney-client privilege claim comports with Iowa law, or that Iowa courts would adopt it if given the opportunity, I decline to take such a bold departure from established Iowa law and will not adopt Luken's theory. Therefore, this portion of Edwards's motion is granted.

### III.  CONCLUSION

For the reasons discussed above, Edwards's Motion to Dismiss is denied as to Luken's Title III, Iowa common law invasion of privacy, and Iowa Code Chapter 808B claims.  Edwards's motion is granted as to Luken's invasion of attorney-client privilege claim.

**IT IS SO ORDERED.**

**DATED** this 3rd day of May, 2011.

MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA