**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| GENE C. LUKEN,<br><br>Plaintiff,<br>vs.<br><br>TINA MARIE EDWARDS, formerly known as TINA MARIE LUKEN,<br><br>Defendant. | No. C 10-4097-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING DAMAGES AND ATTORNEY FEES** |

_____

**TABLE OF CONTENTS**

*I.    INTRODUCTION..............................................................................1*

*II.   BACKGROUND...............................................................................2*

*III.  ANALYSIS ....................................................................................3*
    *A.    Statutory Damages ............................................................. 3*
    *B.    Punitive Damages .............................................................. 5*
    *C.    Attorney Fees.................................................................... 6*
        *1.    Block-billing............................................................ 7*
        *2.    Local Rule 54.1....................................................... 7*
        *3.    Lack of Specificity ................................................... 8*
        *4.    Unreasonable Billing ................................................. 8*

*IV.   CONCLUSION............................................................................. 10*

## *I.    INTRODUCTION*

This case arose in the aftermath of the contentious marital dissolution proceeding between plaintiff Gene C. Luken ("Luken") and his former wife, defendant Tina Marie Edwards, formerly known as Tina Marie Luken ("Edwards"). After the divorce was finalized, Luken found a journal that Edwards had kept during the pendency of the

divorce proceedings where she chronicled her secret recordings of him. Luken sued Edwards for violating federal wiretapping laws under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2522 (2006), which provides a civil cause of action for the unauthorized interception, disclosure or use of wire communications. After a jury trial, the jury returned a verdict in favor of Luken.

Before me now is the question of damages and attorney fees.

## II. BACKGROUND

On July 24, 2008, after about seven years of marriage, Edwards and Luken filed for divorce, and their divorce was finalized on June 1, 2010. They both continued to occupy their marriage residence throughout the pendency of the divorce proceedings and until sixty days after the divorce decree. At the end of July 2010, Luken found Edwards's journal where she had made notes referencing recordings of his conversations picked up from six voice-activated tape recorders.

On October 22, 2010, Luken filed suit against Edwards under 18 U.S.C. §§ 2510–2522 for the unlawful interception of his phone conversations with his attorney and others. Beginning October 2, 2012, the parties tried the case to an eight-person jury. On October 3, 2012, the jury returned a verdict in favor of Luken and determined that Edwards had improperly intercepted Luken's private communications for a total of 490 days.

Section 2520 provides that "the court may assess . . . statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000," § 2520(c)(2); "punitive damages in appropriate cases," § 2520(b)(2); and "a reasonable attorney's fee and other litigation costs reasonably incurred," § 2520(b)(3). The Eighth Circuit Court of Appeals has held that the court has discretion to award statutory damages under § 2520. *See Reynolds v. Spears*, 93 F.3d 428, 434 (8th Cir. 1996).

"To merit punitive damages under section 2520, [the prevailing party] must prove a wanton, reckless or malicious violation." *Bess v. Bess*, 929 F.2d 1332, 1135 (8th Cir. 1991) (citing *Jacobson v. Rose*, 592 F.2d 515, 520 (9th Cir. 1978, *cert. denied*, 442 U.S. 930, 999 (1979)). The Eighth Circuit Court of Appeals has also held that an award of attorney fees and costs authorized under § 2520(b)(3) is discretionary with the trial court. *See Morford v. City of Omaha*, 98 F.3d 398, 401 (8th Cir. 1996).

The parties submitted post-trial briefs on damages and attorney fees. In Luken's Brief on Damages, filed on October 15, 2012, he requests the court to award the highest amount of statutory damages, and he requests punitive damages at five times the statutory damages. In Edwards's Brief Regarding Damages, filed on October 16, 2012, she requests that the court deny Luken's requests for statutory and punitive damages. Luken filed his Application for Attorney Fees on October 5, 2012, claiming $50,733.75 in attorney fees and $1,334.77 in costs. Edwards responded to Luken's Application for Attorney Fees in her Brief Regarding Damages, requesting that the court deny, or reduce, the attorney fees award.

### III. ANALYSIS

I now turn to the analysis of damages and attorney fees.

#### A. *Statutory Damages*

Section 2520(c)(2) gives the court discretion to assess "statutory damages of whichever is the greater of $100 a day for each day of violation or $10,000." Therefore, Luken may receive an amount up to $49,000 in statutory damages. While Luken requests that I award statutory damages in the highest possible amount of $49,000, Edwards requests that I deny Luken's request for statutory damages.

In some cases, courts have declined to award statutory damages under § 2520 when the defendant had a legitimate reason to record. In *Reynolds v. Spears*, the

Eighth Circuit Court of Appeals held that there was no abuse of discretion when the trial court declined to award statutory damages against a liquor store owner who secretly recorded his employees after the store had been burglarized and a law enforcement officer had told him that wiretapping his own telephone line was legal. 93 F.3d at 436. In *Morford v. City of Omaha*, the Eighth Circuit Court of Appeals upheld the trial court's denial of statutory damages under § 2520 when a law enforcement officer was testing equipment prior to court approval of a wiretap and recorded the plaintiff for 90 seconds. 98 F.3d at 400–401.

While Edwards testified that she made secret recordings for self-protection, the jury did not find this defense sufficient, and I do not find her motive a legitimate defense to her secret recording activity. In *Lewton v. Divingnzzo*, 772 F. Supp. 2d 1046 (D. Neb. 2011), the court found that a mother who hid a recording device in her minor child's teddy bear and recorded conversations involving her ex-husband and others to catalog potential abuse over a period of approximately 100 days for use in a child custody case violated § 2520 and the court awarded $10,000 in statutory damages to each plaintiff. Like the mother in *Lewton,* Edwards testified that she made her recordings to document potential abuse, but the legitimacy of this explanation is undercut by the fact that she continued to live in the home with Luken. I do not think Edwards's defense of recording for self-protection is a legitimate reason to deny the statutory damages. While making recordings for self-protection may be a legitimate purpose, it was not a legitimate purpose in this case.

Considering the totality of Edwards's conduct as reflected in the evidentiary record, I find that Edwards should be held liable for statutory damages in the amount of $49,000 under § 2520.

### B.  Punitive Damages

The Eighth Circuit Court of Appeals has held that punitive damages are appropriate under § 2520 when the prevailing party proves "a wanton, reckless or malicious violation." *Bess*, 929 F.2d at 1135. "[P]unitive damages are imposed for purposes of retribution and deterrence." *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 19 (1991).

Luken requests that I award punitive damages at five times the statutory damages. He contends that this multiple is not excessive since it comports with the single-digit ratio between punitive and compensatory damages discussed in *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003). Luken argues that punitive damages are appropriate "to punish not only Ms. Edwards for her blatant perjury but to also send a message to the trial bar to caution their clients to refrain from any similar activity." Plaintiff's Brief at 3 (docket no. 60). Edwards argues that there was no evidence to support an award of punitive damages. Edwards claims that "the plaintiff suffered no actual damages/harm, the recordings were done for self-protection, there was very minimal redisclosure of the recordings, no financial gain or benefit from doing the recordings and a majority of the recordings were destroyed shortly after the divorce decree was issued." Defendant's Brief at 3 (docket no. 61).

I am particularly concerned with Edwards's interception of privileged attorney client communications. The attorney-client privilege "protects confidential communications between a client and her attorney made for the purpose of facilitating the rendition of legal services to the client." *United States v. Yielding*, 657 F.3d 688, 707 (8th Cir. 2011). The evidence shows that Edwards was using the recording devices throughout the pendency of the divorce proceedings, which allowed her to eavesdrop on Luken's conversations with his attorney and others. Since four of the six recorders were allegedly destroyed, and Edwards edited the two recordings in evidence, there

likely was a great number of additional intercepted oral communications that were not in evidence in the trial. I disagree with Edwards's assertion that there was no "benefit from doing the recordings." In trial, Luken testified, "I was just baffled by the fact that no matter what my attorney and I had discussed in terms of how we could settle this or what we could do . . . she was always one step ahead of me." Edwards benefited from eavesdropping on planning and strategy conversations that Luken had with his attorney. Edwards's interception of these privileged conversations, especially as an adverse party during the course of the divorce trial, is particularly reprehensible.

Luken asked for punitive damages in part based on Edwards's trial testimony that the jury obviously disbelieved. I, too, found her core testimony untruthful and not believable. However, Luken cites no legal authority that false testimony under oath at trial, rather than facts giving rise to a legal cause of action may support punitive damages, and I know of none. Doubling the statutory damages fulfills all the purposes of punitive damages in this case. It is worth noting that Luken's undoubted motivation in filing this lawsuit was not to protect and extend the important public interest in federal statutory privacy rights articulated in 18 U.S.C. §§ 2510–2522. Luken is no public interest crusader yearning to vindicate important privacy interests as a private attorney general. He is an angry ex-spouse, still hurting from the betrayal of his former spouse Edwards and their exceptional contentious divorce and post-divorce litigation.

I award punitive damages in the amount of $49,000.

### C. Attorney Fees

Section 2520(b)(3) maintains that a person whose communication is unlawfully intercepted may recover "a reasonable attorney's fee and other litigation costs reasonably incurred." I have discretion to determine the award of attorney fees and

costs authorized under § 2520(b)(3). *See Morford*, 98 F.3d at 401. Luken filed his Application for Attorney Fees on October 5, 2012, claiming $50,733.75 in attorney fees and $1,334.77 in costs for work from October 2010 to October 2012. Edwards responded to Luken's Application for Attorney Fees in her Brief Regarding Damages, on October 16, 2012. Edwards requests that I deny Luken's request for attorney fees, and in the alternative, she requests that I reduce the amount of attorney fees on the ground that the amount requested is unreasonable.

### 1. *Block-billing*

Edwards seeks a percentage reduction for "block-billing" in Luken's fee request. A reduction for "block-billing" is appropriate for "billing entries that specify only the daily activities, but that do not specifically indicate how much time was spent on each individual task." *Dorr v. Weber*, 741 F. Supp. 2d 1022, 1036 (N.D. Iowa 2010) (internal quotation marks omitted). Here, Luken's counsel did not specifically itemize all of the entries in his statement for services. Many of the entries by Luken's counsel are block-billed, such as the single entry on May 7, 2012 for 18 hours of work: "Preparation for depositions; listen to tapes produced and notes; conference concerning motions; deposition of Tina Edwards and Voanne Edwards." Plaintiff's Application for Attorney Fees (docket no. 58). A 10% reduction in the claim for attorney fees for block-billing is appropriate in this case.

### 2. *Local Rule 54.1*

Edwards requests a reduction for Luken's counsel's failure to comply with Local Rule 54.1, which requires that lawyers seeking fees "include a separate summary indicating the total time spent performing each of the following major categories of work:"

1. Drafting pleadings, motions, and briefs;
2. Legal research;

3. Investigation;

4. Interviewing;

5. Trial preparation; and

6. Trial.

N.D. IOWA L.R. 54.1(a). Here, Luken's counsel did not include a separate summary to show the total time spent in the major categories of work. By failing to include this required summary, Luken's counsel has "deprived me of a clear snapshot" of how he managed his time. *See Gilster v. Primebank*, --- F. Supp. 2d ----, 2012 WL 3518507 (N.D. Iowa 2012), at *40. A 5% reduction in the claim for attorney fees is appropriate for Luken's counsel's failure to comply with Local Rule 54.1.

### *3.    Lack of Specificity*

Edwards seeks a percentage reduction for the lack of specificity in the statement for services attached to the fee request. "Specificity is the most vital tool in assisting courts in reasonableness review." *Id*. Here, there are several entries with insufficient documentation. For instance, the journal was reviewed on several different dates, but the vague entry descriptions fail to indicate what type of work was conducted on those dates. A 5% reduction in the claim for attorney fees for the lack of specificity is appropriate in this case.

### *4.    Unreasonable Billing*

Edwards argues that the fee affidavit claiming nearly 200 hours of work is excessive and unreasonable, since the trial only lasted one and a half days, only five witnesses testified, and there were no lengthy motions or briefings. In *Dorr*, I applied a 10% reduction for a "wildly overreaching" fee request by three attorneys in a simple section 1983 action. 741 F. Supp. 2d at 1034–37. I disagree with Edwards and conclude that this case is distinguished from *Dorr* because Luken's counsel did not submit an excessive number of hours. I do not find Luken's fee request over-inflated.

On the contrary, Luken's counsel exercised excellent billing judgment. In *Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. 1933 (1983), the Supreme Court discussed billing considerations in determining reasonableness of attorney fees:

> The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." S. Rep. No. 94-1011, p. 6 (1976). Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Copeland v. Marshall,* 205 U.S. App. D.C. 390, 401, 641 F.2d 880, 891 (1980) (en banc) (emphasis in original).

*Hensley*, 461 U.S. at 433–34; *see also Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984) ("The type of services rendered by lawyers, as well as their experience, skill and reputation, varies extensively—even within a law firm."). At the trial, Luken's counsel was joined by Andrea Smook, a young associate attorney, trying her first case out of law school. Although Ms. Smook assisted with research and attended the trial, Luken's counsel did not bill for Ms. Smook's time. By excluding Ms. Smook's time, Luken's counsel demonstrated his "good faith effort to exclude from a fee request hours that are excessive, redundant or otherwise unnecessary." *Hensley*, 461 U.S. at 433–34. In fact he went way beyond the mere exercise of good billing judgment. It would have been reasonable for Luken's counsel to have billed for Ms. Smook's time, since she assisted with the trial and even gave the rebuttal closing argument.[1] It is important that younger

---

[1] Ms. Smook did an outstanding job in her first federal court closing argument.

attorneys get trial experience, especially on civil cases in federal court, which as we all know, is increasingly difficult to do. The decision to exclude Ms. Smook's time from the fee request indicates that Luken's counsel was not overreaching and demonstrated excellent billing judgment, especially in light of the fact the Edwards was also represented by two lawyers far more experienced than Ms. Smook.

Therefore, considering both sides of the ledger, the excellent billing judgment outweighs the block-billing, failure to follow Local Rule 54.1, and lack of billing specificity, and I will not apply a reduction to the attorney fees. Ultimately, I find that the fees and expenses claimed provide reasonable compensation for the work performed.

### IV. CONCLUSION

1. Luken is entitled to $49,000 in Statutory Damages and $49,000 in Punitive Damages, for a total amount of damages of $98,000.

2. While I have noted that the attorney fees should be reduced by 10% for block-billing, 5% for the failure to comply with Local Rule 54.1, and 5% for the lack of billing specificity, the excellent billing judgment demonstrated by Luken's counsel outweighs the need to make any reductions. Therefore, Luken's Application For Attorney Fees is **granted**. Luken is awarded $50,733.75 in attorney fees and $1,334.77 in costs.

**IT IS SO ORDERED**.

**DATED** this 26th day of October, 2012.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA